IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

MARGARET TEMPLETON,

    Plaintiff,

    v.         CIVIL NO.: WDQ-09-3280

FIRST TENNESSEE BANK, N.A., *et al.*

    Defendants.

MEMORANDUM OPINION

Margaret Templeton sued First Tennessee Bank, N.A. ("First Tennessee")[1] and MetLife Bank, N.A. d/b/a MetLife Home Loans ("MetLife"),[2] for violations of state and federal anti-discrimination laws and related torts. For the following reasons, First Tennessee's motion to dismiss and MetLife's motion for judgment on the pleadings will be granted.

---

[1] First Tennessee is a subsidiary of First Horizon National Corporation ("First Horizon"). Compl. ¶ 7.

[2] MetLife acquired First Horizon Home Loan Corporation on September 1, 2008. Compl. ¶ 9 n.2.

I.   Background[3]

From 1986 to 2006, Templeton intermittently worked as a loan officer for First Horizon.  Compl. ¶ 11.  In October 2005, Templeton and her supervisor, Branch Manager Robert J. Cameron, shared a cab ride to their respective homes after a cocktail party at work.  *Id*. ¶ 12.  Before leaving the cab at his home, Cameron tried to kiss Templeton.  *Id*.  Templeton resisted his advances and asked Cameron to get out of the cab, but he responded by forcibly kissing her on the lips.  *Id*.  On October 17, 2005, Templeton called Senior Vice President Jerrie Koenig to complain about this incident.  *Id*. ¶ 13.  Templeton was told that if she did anything about the incident she would "either have to be transferred or leave the company."  *Id*.

In December 2005, Susan Grapes, a processor at First Horizon, complained about Cameron's unwanted advances toward her at the company's Christmas luncheon.  *Id*.  Templeton reported this incident to Koenig and Timonium Branch Manager Al Ingram.  *Id*. ¶ 14.  Koenig and Ingram told Templeton that President Theodore Reichhart was the only person who could remedy the problem.  *Id*.  Accordingly, Templeton met with Reichhart and

---

[3] For these motions, the well-pled allegations in the complaint are accepted as true.  *See Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993).

2

agreed to file a formal complaint, which began an investigation of the incidents. *Id*. ¶¶ 14-15

Following her complaint, Cameron (1) "refused to speak with [Templeton] for six months and made an override on her production," (2) did not invite her to a work-related dinner at an award banquet in Phoenix, and (3) unplugged her phone and computer and poured liquid on her office chair. *Id*. ¶ 15. Templeton complained about this behavior to Employee Service Relations Manager Brenda Meagle, who promised that Koenig would follow up, but Koenig never did. *Id*. On June 30, 2006, Templeton resigned for, *inter alia*, "sexual harassment by [her] immediate supervisor as well as retaliation for having told his supervisor of his discriminatory conduct." *Id*. ¶ 16.[4]

In July 2008, Area Manager Peter O'Donnell contacted Templeton and asked her to return to First Horizon as a relationship manager. *Id*. ¶¶ 9, 18.[5] But, shortly after this conversation, Templeton learned that Reichhart had accused her of having "issues with management" and had stopped the rehiring process. *Id*. ¶ 19.

---

[4] When she resigned, Templeton was in the top quarter of producers nationwide at First Horizon. Compl. ¶ 16.

[5] Templeton expressed interest in this position because Cameron was no longer employed with First Horizon, and she anticipated a good working relationship with O'Donnell. *Id*. ¶ 18. Around this time, Office Sales Manager Mark Siefert asked Templeton to return to work with him. *Id*.

3

On September 15, 2008, Templeton became a Residential Mortgage Banker with National City. *Id*. ¶ 21. On January 23, 2009, Templeton filed a complaint against MetLife with the Equal Employment Opportunity Commission ("EEOC"). *Id*. ¶ 2. On February 3, 2009, she amended that complaint to add First Tennessee as a respondent. *Id*. ¶ 2 n.1.[6] In June 2009, during a meeting with National City Branch Manager Mike Taylor, the Defendants discussed the possibility of hiring a group of National City employees but said that they "would not welcome" Templeton. *Id*. On September 2, 2009, the EEOC issued a right to sue letter. *Id*. ¶ 3; Paper No. 22, Ex. 2.

On October 30, 2009, Templeton sued the Defendants in the Circuit Court for Anne Arundel County. Paper No. 1 at 1. On December 10, 2009, the Defendants removed to this Court based on federal question jurisdiction. Paper No. 1. On January 5, 2010, First Tennessee moved to dismiss for failure to state a claim, Paper No. 17, and MetLife filed its answer, Paper No. 19. On January 8, 2010, MetLife moved for judgment on the pleadings. Paper No. 20.

---

[6] Because MetLife and First Tennessee dispute which entity is responsible for Templeton's claims, Templeton amended her charge to include First Tennessee. *Id*.

4

II. Analysis

    A.    Standards of Review

        1.    Rule 12(b)(6)

Under Fed. R. Civ. P. 12(b)(6), an action may be dismissed for failure to state a claim upon which relief can be granted. Rule 12(b)(6) tests the legal sufficiency of a complaint, but does not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).

The Court bears in mind that Rule 8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." *Migdal v. Rowe Price-Fleming Int'l Inc.*, 248 F.3d 321, 325-26 (4th Cir. 2001). Although Rule 8's notice-pleading requirements are "not onerous," the plaintiff must allege facts that support each element of the claim advanced. *Bass v. E.I. Dupont de Nemours & Co.*, 324 F.3d 761, 764-65 (4th Cir. 2003). These facts must be sufficient to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

To present a facially plausible complaint, a plaintiff must do more than "plead[] facts that are 'merely consistent with a defendant's liability'"; the facts as pleaded must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.

5

Ct. 1937, 1949 (*quoting Twombly*, 550 U.S. at 557). The complaint must not only allege but also "show" the plaintiff is entitled to relief. *Id.* at 1950 (*citing* Fed. R. Civ. P. 8(a)(2)). "Whe[n] the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged--but it has not shown--that the pleader is entitled to relief." *Id.* (internal quotation marks omitted).

The Court "should view the complaint in a light most favorable to the plaintiff," and "accept as true all well-pleaded allegations," *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993), but the Court is "not bound to accept as true a legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or "allegations that are mere[] conclus[ions], unwarranted deductions of fact, or unreasonable inferences," *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002).

### 2. Rule 12(c)

"After the pleadings are closed . . . a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). The pleadings close when the defendant files its answer and no responsive pleading is necessary. *See Burbach Broad. Co. of Delaware v. Elkins Radio Corp.*, 278 F.3d 401, 405 (4th Cir. 2002). Under Rule 12(h)(2), a party may raise the defense of failure to state a claim upon which relief can be granted by a

motion for judgment on the pleadings. *Id*. When a motion for failure to state a claim is raised under Rule 12(c), the Rule 12(b)(6) standard applies. *Id*. at 406.

    B.    Retaliation in Violation of Title 20 of the Maryland State Government Article[7] and Title VII

        1.    Scope of the Administrative Complaint

The Defendants argue that the alleged June 2009 retaliation is not actionable because it has never been the subject of an administrative charge. Paper No. 17 at 5-6. Templeton argues that she may raise the June 2009 retaliation claim for the first time in this action because it "is simply a continuation of the retaliatory failure to [re-]hire" alleged in her EEOC complaint. Paper No. 22 at 12.

Templeton's EEOC complaint alleged that First Horizon retaliated against her for reporting Cameron's harassment by refusing to re-hire her in July 2008. Paper No. 22, Ex. 2 at 27-31. She filed that complaint more than four months before the Defendants' alleged statement that they "would not welcome" her with the other National City employees. Under Title VII principles,[8] "a separate administrative charge is not pre-

---

[7] Although the complaint alleges violations of Section 49B, that section was recodified as Section 20, effective October 1, 2009. Md. Cod Ann., State Gov't, Disposition Table (2009).

[8] Maryland courts often look to decisions under federal anti-discrimination laws to interpret similar provisions in Title 20. *See Haas v. Lockheed Martin Corp.*, 396 Md. 469, 914 A.2d 735,

7

requisite to a suit complaining about retaliation for filing the first charge." *Nealon v. Stone*, 958 F.2d 584, 590 (4th Cir. 1992). Making all inferences in favor of Templeton, the Court assumes that the Defendants' June 2009 "would not welcome [her]" comment was retaliation for her EEOC complaint against them. Thus, Templeton has exhausted her administrative remedies with respect to the June 2009 incident.

    2. Timing of the Complaint

First Tennessee argues that Templeton's retaliation claim is barred under Title 20 because she did not file an administrative complaint within six months of the decision not to re-hire her. Paper No. 17 at 4-6. Templeton responds that she filed a timely EEOC complaint, which satisfied the requirements of Section 20-1013(a)(1).[9] Paper No. 22 at 7-8.

---

749 (Md. 2007); *Chappell v. S. Maryland Hosp., Inc.*, 320 Md. 483, 578 A.2d 766, 772 (Md. 1990).

[9] Under Maryland Code Section 20-1013(a), a complainant may bring a civil action for employment discrimination if (1) she filed a timely administrative charge against the defendant under federal, State, or local law; (2) at least 180 days have elapsed since the administrative charge was filed; and (3) the action is filed within 2 years after the alleged discrimination occurred. Md. Code Ann., State Gov't § 20-1013(a) (2009).

    If filed with the Maryland Commission on Human Relations ("MCHR"), the administrative complaint must be "filed within 6 months after the date on which the alleged discriminatory act occurred." *Id*. § 20-1004(c)(1). If filed with the EEOC, the complaint must be filed "within [180] days after the alleged unlawful employment practice occurred" or within 300 days if the complainant "initially instituted proceedings with a State or local agency with authority to grant or seek relief" from

8

Here, Templeton filed an EEOC complaint against MetLife on January 23, 2009 and against First Tennessee on February 3, 2009, which alleged employment discrimination occurring in July 2008. Making all reasonable inferences in favor of Templeton, the Court assumes that her EEOC charges were forwarded to and received by the MCHR within 48 hours of their receipt.[10] Thus, she filed a timely administrative charge with the EEOC within 300 days of the decision not to re-hire her. Having filed this suit on October 30, 2009, which is more than 180 days after her administrative complaints and within two years of the decision not to re-hire her, Templeton has satisfied the requirements for a civil action under § 20-1013(a).

---

unlawful employment practices. 42 U.S.C. § 2000e-5(e)(1) (2009). Pursuant to the worksharing agreement between the MCHR and EEOC, a discrimination complaint filed with the EEOC and forwarded to the MCHR within 300 days of the alleged violation is timely. *See E.E.O.C. v. Techalloy Maryland, Inc.*, 894 F.2d 676, 678 (4th Cir. 1990); *Francis v. Bd. of Sch. Comm'rs of Baltimore City*, 32 F. Supp. 2d 316, 321 (D. Md. 1999).

[10] Under the worksharing agreement, charges received by the EEOC are to be forwarded to MCHR within 48 hours of their receipt. *Techalloy*, 894 F.2d at 678. The Fourth Circuit has "declined to decide whether the charge should be considered as filed on the date the EEOC received it or on the date it was received by the MCHR." *Bennett v. St. Mary's County Sheriff's Dept.*, 229 F.3d 1141, 2000 WL 1144600, at *1 (Aug. 14, 2000) (*quoting Techalloy*, 894 F.2d at 678 n.4). But if the complaint alleges that the plaintiff filed an administrative charge with the EEOC within 300 days of the alleged discrimination, a motion to dismiss for untimely filing must be denied, as "further proceedings [may] reveal that [an] administrative charge was also received by the MCHR within 300 days of the alleged act." *Id*.

### 3. Retaliation Claim

To state a cause of action for retaliation under Maryland law and Title VII, Templeton must show (1) she engaged in protected activity, (2) she was subjected to retaliation, and (3) a causal connection between the protected activity and the retaliation. *Giant of Maryland, LLC v. Taylor*, 188 Md. App. 1, 981 A.2d 1, 23 (Md. Ct. Spec. App. 2009); *Perry v. Perry*, 341 Fed. Appx. 856, 858 (4th Cir. 2009).[11] Retaliatory treatment "encompasses any action by the employer that 'well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Taylor*, 981 A.2d at 23 (*quoting Burlington N. and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)). For these motions, the Court will assume, as the parties have, that Templeton has alleged protected activity.

### 1. Failure to Re-hire in July 2008

The Defendants argue that Templeton has failed to plead facts to show a causal connection between the protected activity--i.e., her reports of Cameron's alleged sexual harassment in October and December 2005--and First Horizon's decision not to re-hire her in July 2008.

---

[11] Maryland courts applying Title 20 follow federal employment discrimination principles to determine if a causal connection exists between retaliatory employment action and protected conduct. *See Taylor*, 981 A.2d at 23-24.

Reichhart's alleged statement that Templeton had "issues with management" is the only fact connecting his refusal to hire her with her past reporting activities. But this general statement, made without reference to Templeton's previous reports of sexual discrimination, is insufficient to show a causal connection between that protected activity and the decision not to re-hire her.[12] Further, a causal connection between the protected activity and the retaliatory action cannot be assumed based on the temporal proximity of the two events because Templeton made her harassment reports more than two years before Reichhart refused to rehire her. *See Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (Adverse action taken 20 months after protected activity is insufficient to show causality.). As facts have not been alleged to show a causal connection, Templeton's retaliation claims under Maryland law and Title VII must be dismissed.

2. June 2009 Comment

Templeton alleges that the Defendants' took adverse employment action against her in June 2009 by commenting that they "would not welcome [her]" transfer with other National City

---

[12] *See O'Neal v. City of Chicago*, 588 F.3d 406 (7th Cir. 2009) (evidence that plaintiff had been called a "complainer" by the supervisor who instituted the retaliatory action was insufficient to establish causal connection).

11

employees; she does not allege that there was any action taken against her consistent with this comment.

An adverse employment action is shown when "a reasonable employee would have found the challenged action materially adverse, which . . . means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)(internal quotations omitted). Whether an employer's action is materially adverse will "depend upon the particular circumstances," and the "[c]ontext matters." *Id*. at 69. "[P]etty slights, minor annoyances, and simple lack of good manners" are insufficient to support a claim of retaliation. *Id*. at 68.[13] Here, the comment allegedly made by the Defendants, in and of itself, was not materially adverse to Templeton. This "petty slight" by her former employer could not have reasonably prevented Temple from pursuing her complaints of discrimination.

C.  Negligent Supervision and Retention

Templeton argues that the Defendants breached their duty to protect her from retaliation by Reichhart, which resulted in her failure to be re-hired in July 2008. Paper No. 22 at 15-17.

---

[13]  The Supreme Court has held that "Title VII's substantive provision and its antiretaliation provision are not coterminous. The scope of the antiretaliation provision extends beyond workplace-related or employment-related retaliatory acts and harms." *Burlington Northern*, 548 U.S. at 67.

12

But courts "ha[ve] repeatedly held . . . that 'Title VII may not form the predicate for claims of negligent retention and supervision.'" *Hart v. Harbor Court Assocs.*, 46 F. Supp. 2d 441, 444 (D. Md. 1999)(*quoting Demby v. Preston Trucking Co.*, 961 F. Supp. 873, 881 (D. Md. 1997)). Similarly, common law negligence claims also may not be predicated on violations of the Maryland code. *Cf. Hammond v. Taneytown Volunteer Fire Co.*, 2009 WL 33447327, at *4 (D. Md. 2009). Thus, Templeton's claim for negligent supervision and retention must be dismissed.

D. Intentional Infliction of Emotional Distress

To prove intentional infliction of emotional distress ("IIED"), Templeton must show that the Defendants' conduct was (1) intentional or reckless, (2) extreme and outrageous, (3) a causal connection between the wrongful conduct and the emotional distress, and (4) her emotional distress was severe. *Manikhi v. Mass Transit Admin.*, 360 Md. 333, 758 A.2d 95, 113 (Md. 2000); *Harris v. Jones*, 281 Md. 560, 380 A.2d 611, 614 (Md. 1977). Each element "must be satisfied completely before a cause of action will lie." *Hamilton v. Ford Motor Credit Co.*, 66 Md. App. 46, 502 A.2d 1057, 1063 (Md. Ct. Spec. App. 1986). "IIED claims are rarely viable in a case brought under Maryland law." *Takacs v. Fiore*, 473 F. Supp. 2d 647, 652 (D. Md. 2007)(internal quotation omitted).

The Defendants contend, *inter alia*, that Templeton has failed to allege facts to show that her emotional distress was severe. Paper No. 17 at 14-15; Paper No. 21 at 3. Severe distress is that which "no reasonable [person] could be expected to endure." *Harris*, 380 A.2d at 616 (internal quotation omitted).[14] To prove severe distress, Templeton must allege facts to show that her emotional distress was "severely disabling" and "disrupted her ability to function on a daily basis." *Bryant v. Better Bus. Bureau of Greater Maryland, Inc.*, 923 F. Supp. 720, 750 (D. Md. 1996).

Here, Templeton has alleged that she suffered "severe . . . mental anxiety" and "extreme emotional distress for which she incurred medical costs." Compl. ¶¶ 20, 34. Without more, Templeton's allegations are, as a matter of law, insufficient to constitute severe distress. *See Harris*, 380 A.2d at 617; *Bryant*, 923 F. Supp. at 749-50.[15] The Defendants' alleged conduct is also insufficiently outrageous to warrant a

---

[14] "The intensity and duration of the distress are factors to be considered in determining its severity." *Harris*, 380 A.2d at 616 (internal quotation omitted).

[15] *See also Ragland v. A.W. Indus., Inc.*, 2009 WL 2507426, at *13 (D. Md. Aug. 13, 2009)(granting motion to dismiss when Plaintiff made general allegation that he suffered "severe emotional distress" without providing more information about the extent of his distress).

14

finding of severity as a matter of law.[16]  Accordingly, the
Defendants' motion to dismiss the IIED claim will be granted.

III. Conclusion

For the reasons stated above, First Tennessee's motion to dismiss and MetLife's motion for judgment on the pleadings will be granted.

June 3, 2010  　　　　　　　　　　　　_____/s/_____
Date　　　　　　　　　　　　　　　　William D. Quarles, Jr.
　　　　　　　　　　　　　　　　　　United States District Judge

---

[16] See Bryant, 923 F. Supp. at 750 (citing B.N. v. K.K., 312 Md. 135, 538 A.2d 1175, 1182 (Md. 1988)("[I]f the acts of the defendant are so horrible, so atrocious and so barbaric that no civilized person could be expected to endure them without suffering mental distress, [a] jury may find as a matter of fact that 'severe' emotional distress resulted.'")).